UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

KEVIN JOHNSON, individually and on behalf
of all others similarly situated,

Plaintiff,

v.

SHOP-VAC CORPORATION,

Defendant.

Case No. 3:19-cv-14834-BRM-DEA

<u>Oral Argument Requested</u>

**Motion Day:   November 4, 2019**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO SHOP-VAC CORPORATION'S MOTION TO DISMISS**

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail:  fklorczyk@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 3

I.    IT IS PREMATURE TO MAKE ANY CHOICE OF LAW
      DETERMINATIONS ................................................................................. 3

II.   WHETHER A REASONABLE CONSUMER WOULD BE MISLED
      ABOUT THE PEAK HORSEPOWER CLAIMS ON THE VACUUMS'
      PACKAGING IS A QUESTION OF FACT ............................................... 3

      A.   Plaintiff Has Sufficiently Alleged That A Reasonable Consumer
           Would Be Misled By The Vacuums' Packaging ............................... 3

      B.   Hidden Disclaimers Cannot Cure Misrepresentations Made On The
           Front Of The Label ......................................................................... 5

III.  PLAINTIFF STATES A CLAIM FOR BREACH OF WARRANTY
      BECAUSE THE VACUUMS FAIL TO CONFORM TO THE PROMISES
      ON THE LABEL ....................................................................................... 9

IV.   PLAINTIFF PLAUSIBLY ALLEGES JUSTIFIABLE RELIANCE ................ 11

V.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS PROPERLY PLEAD
      IN THE ALTERNATIVE .......................................................................... 12

      A.   Privity Is Not Required To State A Claim For Unjust Enrichment ....... 12

      B.   Unjust Enrichment Claims May Be Plead In The Alternative To An
           Express Warranty Claim ................................................................. 13

VI.   PLAINTIFF STATES CLAIMS UNDER MINNESOTA LAW BECAUSE
      THERE IS A PUBLIC BENEFIT CONVEYED TO THE CLASS AND A
      RISK OF FUTURE HARM ...................................................................... 14

VII.  PLAINTIFF'S TORT-BASED CLAIMS ARE NOT BARRED BY THE
      ECONOMIC LOSS DOCTRINE ............................................................. 16

VIII. DEFENDANT'S STANDING ARGUMENTS DO NOT SUPPORT
      DISMISSAL ........................................................................................... 18

      A.   Plaintiff Has Standing To Assert Claims Related To All
           Substantially Similar Shop-Vac Vacuums That Feature An HP Claim ............ 18

      B.   Plaintiff Has Article III Standing To Pursue Injunctive Or
           Declaratory Relief ......................................................................... 21

CONCLUSION .................................................................................................. 23

i

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) ........................................................................ 9

*Baby Neal for & by Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994)................................................................................ 19, 22

*Barron v. Snyder's-Lance, Inc.*,
   2015 WL 11182066 (S.D. Fla. Mar. 20, 2015) ............................................. 7, 9, 12

*Bedi v. BMW of N. Am., LLC*,
   2016 WL 324950 (D.N.J. Jan. 27, 2016) ............................................................ 21

*Burke v. Weight Watchers Int'l, Inc.*,
   983 F. Supp. 2d 478 (D.N.J. 2013) ..................................................................... 21

*Butera v. Honeywell Int'l, Inc.*,
   2019 WL 1760844 (D.N.J. Apr. 18, 2019) ........................................................... 3

*Cannon v. Ashburn Corp.*,
   2016 WL 7130913 (D.N.J. Dec. 7, 2016) ...................................................... 19, 21

*CHNJ Investors, LLC v. Koger*,
   2013 WL 1192400 (D.N.J. Mar. 21, 2013) .......................................................... 14

*Cooper v. Medimetriks Pharm., Inc.*,
   2019 WL 1370414 (D.N.J. Mar. 25, 2019) .......................................................... 14

*Cox v. Chrysler Grp.*,
   2015 WL 5771400 (D.N.J. Sept. 30, 2015) .................................................... 20, 21

*Davidson v. Kimberly-Clark Corp.*,
   873 F.3d 1103 (9th Cir. 2017) ............................................................................ 22

*Deleski Ins. Agency, Inc. v. Allstate Ins. Co.*,
   2013 WL 6858573 (D. Minn. Dec. 30, 2013) ..................................................... 16

*Delgado v. Ocwen Loan Servicing, LLC*,
   2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) ...................................................... 8

*Duran v. Creek*,
   2016 WL 1191685 (N.D. Cal. Mar. 28, 2016)..................................................... 22

*Durso v. Samsung Elecs. Am., Inc.*,
   2013 WL 5947005 (D.N.J. Nov. 6, 2013) ........................................................... 21

*Dzielak v. Whirlpool Corp.*,
  26 F. Supp. 3d 304 (D.N.J. 2014) ............................................................................ 4, 10

*Eberhart v. LG Elecs. USA, Inc.*,
  2015 WL 9581752 (D.N.J. Dec. 30, 2015) .................................................................. 21

*Emerson Radio Corp. v. Orion Sales, Inc.*,
  2000 WL 49361 (D.N.J. 2000) .................................................................................. 17

*F.T.C. v. Wyndham Worldwide Corp.*,
  10 F. Supp. 3d 602 (D.N.J. 2014) ................................................................................ 5

*Feuerstein v. Simpson*,
  582 Fed. App'x. 93 (3rd Cir. 2014) ............................................................................ 23

*First Valley Leasing, Inc. v. Goushy*,
  795 F. Supp. 693 (D.N.J. 1992) ................................................................................. 18

*Fischell v. Cordis Corp.*,
  2016 WL 5402207 (D.N.J. Sept. 26, 2016) ................................................................ 17

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) .............................................................................. 5

*Grasso Foods, Inc. v. Wynn Environmental Sales Co.*,
  2018 WL 3455479 (D.N.J. 2018) ............................................................................... 17

*Hudock v. LG Elecs. U.S.A., Inc.*,
  2017 WL 1157098 (D. Minn. Mar. 27, 2017) ............................................................ 16

*In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litig.*,
  275 F. Supp. 3d 910 (N.D. Ill. 2017) ........................................................................... 8

*In re ConAgra Foods Inc.*,
  908 F. Supp. 2d 1090 (C.D. Cal. 2012) .................................................................... 9, 10

*In re Ferrero Litig.*,
  794 F. Supp. 2d 1107 (S.D. Cal. 2011) ...................................................................... 11

*In re Gerber Probiotic Sales Practices Litig.*,
  2014 WL 5092920 (D.N.J. Oct. 10, 2014) ................................................................. 21

*In re Insulin Pricing Litig.*,
  2019 WL 643709 n.14 (D.N.J. Feb. 15, 2019) ........................................................... 21

*In re Insurance Brokerage Antitrust Litig.*,
  2017 WL 3642003 (D.N.J. Aug. 23, 2017) ................................................................. 14

*In re K-Dur Antitrust Litig.*,
  338 F. Supp. 2d 517 (D.N.J. 2004) .......................................................................... 3, 13

*In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*,
  2013 WL 6450701 (D.N.J. Dec. 9, 2013) .................................................................... 21

*In re Shop-Vac Mktg. & Sales Practices Litig.*,
  2014 WL 3557189 (M.D. Pa. July 17, 2014) .......................................................... passim

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
  2017 WL 1902160 (D.N.J. May 8, 2017) ............................................... 3, 14, 17, 18

*Jou v. Kimberly-Clark Corp.*,
  2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ............................................................ 6

*KBWB Constr. Co., LLC v. Allied Envtl. Servs., Inc.*,
  2019 WL 585426 (D.N.J. Feb. 13, 2019) ................................................................... 18

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
  2018 WL 4144683 (D.N.J. Aug. 29, 2018) ............................................................... 18

*Knotts v. Nissan N. Am., Inc.*,
  346 F. Supp. 3d 1310 (D. Minn. 2018) ..................................................................... 16

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) ......................................................................... 8

*Lilly v. Jamba Juice Co.*,
  2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .......................................................... 22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................... 23

*Luppino v. Mercedes-Benz USA, LLC*,
  2013 WL 6047556 (D.N.J. Nov. 12, 2013) ......................................................... 19, 21

*Lynch v. Tropicana Prod., Inc.*,
  2013 WL 2645050 (D.N.J. June 12, 2013) ............................................................ passim

*Maniscalco v. Brother Int'l Corp. (USA)*,
  627 F. Supp. 2d 494 (D.N.J. 2009) ........................................................................... 13

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ...................................................................................... 20

*Metex Manufacturing Corp. v. Manson*,
  2008 WL 877870 (D.N.J. Mar. 28, 2008) ................................................................. 17

*Morcom v. LG Elecs. USA, Inc.*,
  2017 WL 8784836 (D.N.J. Nov. 30, 2017) ............................................................... 13

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015) ...................................................................................... 19

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ................................................................ 8

*Neuss v. Rubi Rose, LLC*,
    2017 WL 2367056 (D.N.J. May 31, 2017) .................................................... 19, 21

*Spirits & Wine, Inc.*,
    877 F. Supp. 2d 192 (D.N.J. 2012) .............................................................. 12, 13

*Stewart v. Smart Balance, Inc.*,
    2012 WL 4168584 (D.N.J. June 26, 2012) ........................................................ 21

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) .................................................... 6

*U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc.*,
    2014 WL 197878 (D.N.J. Jan. 14, 2014) ........................................................ 14

*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008) .............................................................................. 6

*Wilson v. Frito-Lay N. Am., Inc.*,
    2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) ...................................................... 6

**STATUTES**

N.J.S.A § 2-314 ....................................................................................................... 9

N.J.S.A § 2-314(2)(a)-(f) ........................................................................................ 9

**OTHER AUTHORITIES**

Fed. Prac. & Proc. Civ. § 1785.1 (3d ed. 2014) .................................................. 19

U.C.C. § 2-314(a) .................................................................................................... 9

**INTRODUCTION**

Every wet/dry vacuum manufactured by Shop-Vac Corporation ("Shop-Vac" or "Defendant") is "uniformly labeled, packaged, marketed, and advertised with representations of horsepower ratings between '2.5 Peak HP' to '6.5 Peak HP.'"  Compl. ¶ 11.  Plaintiff contends these "HP Claims are untrue and misleading, as the actual operating power and functionality of the Vacuums, under any condition, is only a small fraction of these representations."  *Id.* ¶ 12. That is because "the total possible output power of the Vacuums is only about 1.931 horsepower (one horsepower equals about 745.7 watts).  …  Thus, Defendant's HP Claims are unobtainable, under any conditions."  *Id.* ¶ 2.

This is not the first case against Defendant concerning the HP Claims.  Back in 2012, Defendant was sued in the Middle District of Pennsylvania for ostensibly the same conduct.  *See In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 12-md-02380 (M.D. Pa.) ("*In re Shop-Vac*"). A classwide settlement was finally approved on December 9, 2016.  As part of the settlement, Defendant agreed to injunctive relief that consisted of "changing the packaging of its wet/dry vacuums to include a clear explanatory statement directly on the product packaging:"

> "Peak Horsepower" (PHP) is a term used in the wet-dry vacuum industry for consumer comparison purposes. It does not denote the operational horsepower of a wet-dry vacuum but rather the horsepower output of a motor, including the motor's inertial contribution, achieved in laboratory testing.  In actual use, Shop-Vac's motors do not operate the peak horsepower shown.

MTD at 2 (quoting Shortnacy Decl., Ex. 2 at 12).

Defendant now moves to dismiss Plaintiff's Complaint, primarily arguing that "no reasonable consumer could be misled about what peak horsepower means because it is explained on the product's packaging."  MTD at 7.  According to Defendant, Judge Kane found that "Shop-Vac's packaging changes remedied any possible confusion created by its packaging. Since that time, Shop-Vac has reasonably relied on Judge Kane's finding – and her blessing of

1

the language on the box." MTD at 3, 24. In other words, Defendant believes Judge Kane's "blessing" renders it immune from any further liability related to the HP Claims. Thus, the central issue raised by Defendant's motion is whether its "explanatory statement," *i.e.*, the purported disclaimer, requires – as a matter of law – a finding that no reasonable consumer would be misled by the HP Claims. It does not.

Unfortunately for Defendant, however, Judge Kane did not "bless" the location, print, font size, or context of the disclosure. In fact, neither the Final Approval Order, nor the settlement agreement, so much as reference these important considerations. The settlement only required Defendant to provide the agreed-upon explanatory statement somewhere "on its website, product boxes, and any other marketing materials that refer to Peak Horsepower …." Shortnacy Decl., Ex. 2 at 12. Similarly, the final approval motion merely stated that "Shop-Vac has agreed to alter the manner in which the Vacuums are marketed and labeled to address the horsepower misrepresentation complained of" and recited the agreed-upon language. Shortnacy Decl., Ex. 3 at 6. Moreover, Judge Kane's final approval order is silent as to any aspect of the disclaimer other than its language, such as its proximity to the HP Claims. *See* Shortnacy Decl., Ex. 4 at 20. Finally, even though not submitted by Defendant, a review of the transcript from the final approval hearing confirms that the location and size of the "blessed" disclaimer was never presented to or otherwise addressed by the court. *See In re Shop-Vac*, No. 12-md-02380, Dkt. 210 (M.D. Pa. Nov. 18, 2016). Thus, the prior settlement is not an open license to manipulate and position the disclaimer in a manner that effectively renders it unlikely to be seen and useless.

Having dispensed with Defendant's primary disclaimer argument, the rest of its arguments easily unravel. At a minimum, Plaintiff's claims under the New Jersey Consumer Fraud Act or Pennsylvania's Unfair Trade Practices and Consumer Protection Law will necessarily survive because Defendant does challenge his ability to assert them. For all of these

2

reasons, and those set out below, Defendant's motion to dismiss Plaintiff's Complaint should be denied in full.

## ARGUMENT

**I.      IT IS PREMATURE TO MAKE ANY CHOICE OF LAW DETERMINATIONS**

Defendant asserts that, because "Plaintiff's claims are not plausible under any of the potentially applicable laws … the Court need not engage in a complete choice-of-law analysis to dismiss the claims," and that "in any event, Minnesota law … govern[s]."  MTD at 7 n.1.  Curiously, Defendant then proceeds to apply each states' laws to defend its position.  *Id.* at 7.  However, a "choice of law analysis has routinely been found to be premature at the motion to dismiss phase of a class action law suit, especially when certain discovery is needed to further develop the facts that will be used in the choice of law analysis."  *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *10 (D.N.J. May 8, 2017) (declining choice of law analysis at motion to dismiss stage in case involving Minnesota, Pennsylvania, and New Jersey law).  This is particularly true where, as here, "Defendant has failed to explain how Plaintiffs' common law claims conflict among their home states."  *Id.*; *see also In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004) (deferring choice of law analysis to class certification stage).  "Generally, where a defendant fails to meet their burden of demonstrating a conflict, a court applies the law of the forum state."  *Butera v. Honeywell Int'l, Inc.*, 2019 WL 1760844, at *5 (D.N.J. Apr. 18, 2019) (citation omitted).  New Jersey law therefore governs.

**II.     WHETHER A REASONABLE CONSUMER WOULD BE MISLED ABOUT THE PEAK HORSEPOWER CLAIMS ON THE VACUUMS' PACKAGING IS A QUESTION OF FACT**

**A.      Plaintiff Has Sufficiently Alleged That A Reasonable Consumer Would Be Misled By The Vacuums' Packaging**

Defendant asserts that Plaintiff "does not plausibly allege any kind of false or deceptive

statement, which means *all* claims should be dismissed."  MTD at 9.[1]  That ignores the

Complaint's allegations.  "Plaintiff must allege that a misrepresentation induced an objectively

reasonable expectation about a product and that this expectation was not met."  *Dzielak v.*

*Whirlpool Corp.*, 26 F. Supp. 3d 304, 335 (D.N.J. 2014).  "For a statement to be deemed

deceptive or misleading, consumers must have held expectations about the matter in question and

those expectations must be defeated."  *Lynch v. Tropicana Prod., Inc.,* 2013 WL 2645050, at *6

(D.N.J. June 12, 2013).

Here, Plaintiff "reviewed the product's labeling and packaging and saw that the vacuum

purportedly had a horsepower rating of '6.5 Peak HP.'"  Compl. ¶ 5.  "The Vacuums are

commonly and uniformly labeled, packaged, marketed, and advertised with representations of

horsepower ratings between '2.5 Peak HP' to '6.5 Peak HP.'"  *Id.* ¶ 11.  Not only is the Peak HP

claim on the packaging, but it is also incorporated into the Vacuums' literal product names.  *See*

*id.* ¶ 5 ("Plaintiff Johnson purchased ... the 'Shop-Vac 16 Gallon 6.5. Peak HP Stainless Steel

Contractor Wet Dry Vac'").  Plaintiff understood these claims to be "representations and

warranties that his Shop-Vac vacuum was capable of producing the claimed '6.5 Peak HP'

during normal use and operation."  *Id.*  That is objectively reasonable, especially in the light of

the common understanding of the term horsepower:

> A horsepower is a common measure of the work power of a device.
> Both normal consumers and technical experts understand and use
> horsepower as a standard unit of measurement for determining the
> work power, or power output, of a particular device.

---

[1] As Defendant notes, Minnesota, Pennsylvania, and New Jersey all require an allegation "that
Shop-Vac made an incorrect or false statement or representation of material fact."  MTD at 7-8.
Given the uniformity and failure to identify any conflict, the Court should apply New Jersey law.
*See, e.g.*, *In re Shop-Vac Mktg. & Sales Practices Litig.*, 2014 WL 3557189, at *5 (M.D. Pa. July
17, 2014) ("Defendants encourage the Court to conduct this analysis in conjunction with the
motion to dismiss, but do not highlight for the Court the conflicts in potentially applicable state
laws, nor do they address how any differences are material to the Court's disposition of the
pending motion.  Thus, because it does not appear that a choice of law analysis is dispositive of
any of the issues currently before the Court, the Court [should] defer ruling on the choice of law
issue until the parties present a factual record and more substantive briefing on the issue.").

*Id.* ¶ 13; *see also Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 479 (S.D.N.Y. 2014) ("[R]easonable consumers might be misled by, *inter alia*, the name of the product.").

As Plaintiff alleges, his expectations were not met because the "HP Claims are untrue and misleading, as the actual operating power and functionality of the Vacuums, under any condition, is only a small fraction of these representations." Compl. ¶ 12. Stated otherwise, "[i]t is physically impossible for any of the Vacuums to achieve a horsepower output anywhere close to Defendant's HP Claims." *Id.* ¶ 2. Accordingly, Plaintiff plainly alleges that he had an objectively reasonable expectation that his Vacuum could generate 6.5 Peak HP while in operation and that expectation was not met. That is sufficient at this stage because "the meaning of an advertisement, the claims or net impressions communicated to reasonable consumers, is fundamentally a question of fact." *F.T.C. v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 631 (D.N.J. 2014). Indeed, "[o]nly in the clearest of cases is it proper for a court to make a determination that a reasonable consumer is not likely to be misled at the motion to dismiss stage." *In re Shop-Vac*, 2014 WL 3557189, at *12 (M.D. Pa. July 17, 2014) (internal quotations omitted).

### B.  Hidden Disclaimers Cannot Cure Misrepresentations Made On The Front Of The Label

Defendant next insists that "Plaintiff does not plausibly allege that the Settlement's explanatory language about the Peak Horsepower measurement printed on the box is inaccurate or that the label as a whole contains a false affirmation of fact or promise or description of the goods." MTD at 13. That is meritless.

In a footnote – and without citation to a single case or other authority – Defendant argues that "Plaintiff is properly foreclosed from arguing the proximate location of the disclaimer

language somehow caused his confusion because (among other reasons) he admits that he read and reviewed the product packaging." *Id.* at 12 n.9. That is utter nonsense. "[T]he mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement. … Rather, the significance of a disclaimer depends upon factors such as the font size and placement of the disclaimer as well as the relative emphasis placed on the disclaimer and the allegedly misleading statement." *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *16 (E.D.N.Y. Sept. 22, 2015). As the Ninth Circuit explained:

> [R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the [disclaimer] in small print on the side of the box. … We do not think that … manufacturers can mislead consumers and then rely on the [disclaimer] ***to correct those misinterpretations and provide a shield for liability for the deception***. Instead, reasonable consumers expect that the [disclaimer] contains more detailed information about the product that ***confirms*** other representations on the packaging.

*Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008). Courts have applied *Williams* "in rejecting the argument that … representations on the front of the packaging must be viewed in combination with the back of the packaging to resolve any 'ambiguity.'" *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *8 (N.D. Cal. Dec. 10, 2013); *Wilson v. Frito-Lay N. Am., Inc.*, 2013 WL 1320468, at *12-13 (N.D. Cal. Apr. 1, 2013) ("Even though the nutrition box could resolve any ambiguity, the Court cannot conclude as a matter of law, in the context of a Rule 12(b)(6) motion, that no reasonable consumer would be deceived by the 'Made with ALL NATURAL Ingredients' labels.") (citations omitted).

Here, the HP Claim is one of, if not the, most prominent claims on the front panel of the

box. *See* Wolf Decl. [Dkt. 12-2], Ex. A.[2]  The more prominent HP Claim all but obscures

Defendant's "explanatory statement," especially since it is sandwiched in the middle of a large

block of fine-print text that includes trademark registrations and other regulatory information:



Wolf Decl., Ex. B.  The disclaimer's obscurity is compounded by the fact that the Vacuum's box

is 18.3125 inches wide by 31.0625 inches high, or approximately 1.5 feet wide by 2.6 feet tall.

Wolf Dec. ¶ 8.  By contrast, the disclaimer is less than an inch tall and 3.6 inches wide.  *See id*.

Even worse, as Defendant's partial label exemplar reveals, the statement is *not* located on the

same front panel as the HP Claim.  Rather, it is in the bottom left-hand corner of an <u>entirely

different side panel of the box</u>.  Wolf Decl., Ex. A.

    "Whether a disclaimer on the back of a product 'eliminates the possibility of a reasonable

consumer being misled' by the product's marketing claims [is] not ripe for resolution at the

motion to dismiss stage."  *Barron v. Snyder's-Lance, Inc.,* 2015 WL 11182066, at *15 (S.D. Fla.

Mar. 20, 2015) (internal citation omitted).  The Court should thus reject Defendant's invitation to

conclude, as a matter of law, that reasonable consumers always remove a 2.6 ft. x 1.5 ft box from

---

[2] Despite insisting "[c]ontext is key," MTD at 12, the packaging depicted in Exhibit A to the
Wolf Declaration is incomplete as it shows only two of the six sides of the box.  *See* Wolf Decl.
Ex. A.  As such, the Court should not rely on the exemplars provided in the Wolf Declaration for
the complete context regarding the challenged claims as Defendant requests.  *See, e.g., In re
Shop-Vac,* 2014 WL 3557189, at *3 (M.D. Pa. July 17, 2014) ("Accordingly, in consideration of
the Third Circuit's reluctance to convert motions to dismiss into motions for summary judgment,
and Plaintiffs' objections to judicial notice, the Court will decline to exercise its discretion to
take notice of the packaging and its contents at this time.").

shelves in order to confirm there is no hidden fine print disclaiming a prominent claim made on the front of the box.  *See Lynch*, 2013 WL 2645050, at *6 (adopting the reasoning of *Williams* in rejecting the argument that a "pasteurized" disclaimer prevented any consumer from reasonably believing that the claim "'100% pure and natural orange juice' meant it was akin to fresh-squeezed orange juice"); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287-88 (S.D.N.Y. 2014) (holding that a disclosure did not, as a matter of law, cure an alleged misrepresentation because "a reasonable consumer might ... focus on the more prominent portion of the product label that touts the product as 'Fat Free Milk and Omega-3s,' and overlook the smaller text that discloses the fat content on the front of the carton or the nutrition label"); *Delgado v. Ocwen Loan Servicing, LLC*, 2014 WL 4773991, at *9 (E.D.N.Y. Sept. 24, 2014) (holding that disclosures were "not conspicuous or prominent enough to necessarily cure" alleged misrepresentation and declining to grant dismissal on basis of reasonable consumer prong).

Defendant's cases do not compel the opposite conclusion.  Unlike here, the disclaimer at issue in *Nelson v. MillerCoors, LLC* was in "close proximity" to the challenged statements on the beer bottle's label.  *Nelson v. MillerCoors*, *LLC*, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017).  Similarly, *In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litig.*, 275 F. Supp. 3d 910, 925 (N.D. Ill. 2017) is inapt because Plaintiff is not "read[ing] a true statement on a package ... [and] disregard[ing] well-known facts of life" given that his interpretation comports with the common understanding of the term horsepower.  Compl. ¶ 13.  Since Plaintiff's understanding of the HP Claim is reasonable and comports with the well-known facts of life, the Court "cannot conclude at this stage that a reasonable consumer would not understand the term 'peak horsepower' to mean horsepower achieved in actual use of the vacuum. … [T]his is not the rare occasion in which the Court can resolve this question at the motion to dismiss stage[.]"

*In re Shop-Vac*, 2014 WL 3557189, at *12 (emphasis added).[3]  Accordingly, the Court should permit this case "to progress to the discovery phase [to] provide the court with a more detailed answer to the question of whether" consumers reasonably believe that the Vacuums can generate the stated Peak HP in actual use.  *Lynch*, 2013 WL 2645050, at *6; *Barron*, 2015 WL 11182066, at *15.

### III.   PLAINTIFF STATES A CLAIM FOR BREACH OF WARRANTY BECAUSE THE VACUUMS FAIL TO CONFORM TO THE PROMISES ON THE LABEL

Defendant claims that "[i]mplied-warranty claims focus only on whether a product works and is merchantable, not on what is represented about the product."  MTD at 15.  That is not the law.  A claim for breach of the implied warranty of merchantability requires goods to be "(c) fit for the ordinary purposes for which such goods are used; <u>and</u> … (f) conform to the promise or affirmations of fact made on the container or label if any."  N.J.S.A § 2-314(2)(a)-(f); U.C.C. § 2-314(a)-(f).  Stated otherwise, "New Jersey's statute provides that, for goods to be merchantable, they must 'conform to the promises or affirmations of fact made on the container or label if any.'"  *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1111 (C.D. Cal. 2012).  As the comments make clear, "[p]aragraph (f) applies … wherever there is a label or container on which representations are made."  N.J.S.A § 2-314, U.C.C. Comment (10).

Defendant also argues that "Plaintiff never alleges anything that remotely suggests the vacuum was unmerchantable."  MTD at 16.  That is wrong.  Here, "Plaintiff[] bargained for more than a functional vacuum; [he] bargained for a vacuum with certain specifications

---

[3] As such, this case is unlike *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 300-01 (D.N.J. 2009), where the plaintiff's lack of allegations required the court "to speculate as to whether this expectation was objectively reasonable, and more importantly, whether what Plaintiffs received was ostensibly less than what [the defendant] promised."  As the court explained, "[g]enerally, an ascertainable loss occurs 'when a consumer receives less than what was promised.'  … When pleading a benefit-of-the-bargain loss, the plaintiff must allege 'the difference between the [product] she received and the [product] as represented at purchase.'"  *Id.*  Here, by contrast, Plaintiff alleges that he "paid a substantial price premium due to the false and misleading HP Claims.  However, Plaintiff Johnson did not receive the benefit of his bargain, because his Shop-Vac vacuum, in fact, does not produce anywhere near 6.5 horsepower."  Compl. ¶ 5.

regarding power." *In re Shop-Vac*, 2014 WL 3557189, at *5. Plaintiff thus alleges that the Vacuums are not fit for their ordinary purpose because they can only operate at a "small fraction of [the Peak HP] representations" such that "Defendant's HP Claims are unobtainable … under any conditions." Compl. ¶¶ 2, 12. For instance, Plaintiff's 6.5 Peak HP Vacuum uses "significantly less than the 4849 watts a true 6.5 horsepower motor requires." *Id.* ¶ 21. "Defendant [therefore] breached the warranty implied in the contract for the sale of the Vacuums because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Vacuums do not, and in fact, could never output the horsepower claimed during use by Class members as advertised." *Id.* ¶ 46.

Other courts have found similar allegations sufficient to state a claim for breach of implied warranty. *See Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 330 (D.N.J. 2014) (finding allegations that washers failed to conform to "[t]he Energy Star label" sufficient to "adequately state a claim for breach of the implied warranty of merchantability" because the "Energy Star label [was] more analogous to the core transportation function of [a] car" and therefore it was "central to the product's value or function."). As in *Dzielak*, Defendant's HP Claims therefore go to the core function of the Vacuums because consumers "rel[y] on Defendant's horsepower ratings to determine the strength and suction ability of their Vacuums compared to others." Compl. ¶ 3; *see also In re Shop-Vac*, 2014 WL 3557189, at *9 (refusing to dismiss implied warranty claim based on allegations that "the vacuums failed to function properly, failed to conform to the representations on the container, and therefore failed to pass without objection in the trade …."); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1112 (C.D. Cal. 2012) (holding that plaintiffs sufficiently alleged breach of implied warranty under New Jersey law by "alleging that Wesson Oils do not conform to the representation on their

10

labels that they are '100% Natural'"); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1110 (S.D. Cal. 2011) (declining to dismiss claims alleging that Nutella did not conform to the representations that it was "healthy and beneficial to children when in fact it contains dangerous levels of fat and sugar").

## IV.     PLAINTIFF PLAUSIBLY ALLEGES JUSTIFIABLE RELIANCE

Defendant argues that "Plaintiff's negligent-misrepresentation claim also fails because he does not allege that he justifiably relied on any false information supplied by Shop-Vac."  MTD at 17.  According to Defendant, "Plaintiff's reliance on the Peak Horsepower rating of the vacuum he allegedly purchased – without reference to the clarifying language explaining that rating – is not reasonable" because "[a] reasonable consumer reading the packaging to note the exact Peak Horsepower rating on a wet/dry vacuum would also see the information clarifying and explaining that rating[.]"  *Id.* at 18.  That is meritless.

Plaintiff plainly alleges his reliance on the HP Claim when he purchased his "Shop-Vac® 16 Gallon 6.5 Peak HP Stainless Steel Contractor Wet Dry Vac" and saw that the "vacuum purportedly had a horsepower rating of '6.5 Peak HP.'"  Compl ¶ 5.  "Plaintiff Johnson saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that his Shop-Vac vacuum was capable of producing the claimed '6.5 Peak HP' during normal use and operation."  *Id.*  Further, he "relied on [the Peak HP] representations and warranties in deciding to purchase his Shop-Vac vacuum."  *Id.*

Regardless, as discussed above, in the context of reasonable consumer expectations, a disclaimer does not "inherently 'provide a shield for liability for the deception.'"  *Lynch*, 2013 WL 2645050, at *7.  Further, "whether a disclaimer on the back of a product 'eliminates the possibility of a reasonable consumer being misled' by the product's marketing claims [is] not ripe for resolution at the motion to dismiss stage."  *Barron*, 2015 WL 11182066, at *15 (internal

11

citation omitted).  As such, whether the disclaimer precludes Plaintiff's justifiable reliance on

Defendant's HP Claims is a question that cannot be resolved on the current motion.

## V.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS PROPERLY PLEAD IN THE ALTERNATIVE

### A.   Privity Is Not Required To State A Claim For Unjust Enrichment

Defendant contends that Plaintiff "lacks privity with Shop-Vac" and therefore his "claim

fails for lack of privity."  MTD at 18.  That is wrong.  As Judge Hillman explained:

> [W]here a plaintiff alleges that a defendant manufacturer has made
> false claims or misrepresentations directed for the purpose of
> generating retail sales, and where those retails sales could have the
> effect of increasing the amount of wholesale sales to the
> manufacturer, it is plausible that a plaintiff can show evidence of a
> sufficiently direct relationship between the parties under New
> Jersey law.

*Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192 (D.N.J. 2012).  In *Stewart*, the

court determined that the defendant's marketing campaign, "which included the use of product

packaging, taxi cab signboards, billboards, the Internet, and print publications specifically

designed to entice consumers to buy [defendant's product]" gave rise to a sufficiently direct

relationship with consumers because the defendant was not an innocent third party.  *Id.*

The same is true here.  Much as in *Stewart*, Plaintiff alleges, "[t]he Vacuums are

commonly and uniformly labeled, packaged, marketed, and advertised with representations of

horsepower ratings between '2.5 Peak HP' to '6.5 Peak HP[.]'"  Compl. ¶ 13.  Not only is the

HP Claim on the prominently on the packaging and the Vacuums themselves, but it also baked in

to the literal name of the product.  *See id.* (indicating Plaintiff purchased a vacuum sold as a

"Shop-Vac® 16 Gallon 6.5 Peak HP Stainless Steel Contractor Wet Dry Vac").  As such,

Plaintiff has plausibly alleged that the HP claim is "specifically designed to entice consumers to

buy" Defendant's Vacuums.  *Stewart*, 877 F. Supp. 2d at 200.  Indeed, the HP Claim, "which a

reasonable consumer assumes is correct, forms a substantial basis of his or her bargain, and in turn allows Defendant to command a price premium for the Vacuums over comparable models. The higher the horsepower number, the more likely a consumer is to purchase the vacuum over another model, and the more money a consumer is willing to spend." Compl. ¶ 3. These allegations are sufficient to establish a direct relationship with consumers. *See, e.g.*, *Morcom v. LG Elecs. USA, Inc.*, 2017 WL 8784836, at *10 (D.N.J. Nov. 30, 2017) ("[Plaintiffs have alleged] that … [D]efendant[, a] manufacturer[,] has made false claims or misrepresentations directed for the purpose of generating retail sales … [and Plaintiffs have pled] a sufficiently direct relationship between the parties under New Jersey law."); *Lynch*, 2013 WL 2645050, at *10 ("In determining whether a claim for unjust enrichment has been sufficiently plead, a distinction has been made between defendants who were alleged to have misrepresented the product at the heart of litigation and defendants who were innocent third parties.").

### B. Unjust Enrichment Claims May Be Plead In The Alternative To An Express Warranty Claim

Defendant asserts that "a claim for unjust enrichment cannot lie when based on the same subject matter covered by a valid contract[.]" MTD at 18. That argument is contrary to Rule 8(d)(2), which provides that "[a] party may set out 2 or more statements of a claim or defense *alternatively* or hypothetically …." (emphasis added). Likewise, Rule 8(a)(3) provides that a complaint may "include relief in the *alternative* [such as equitable relief here] or different types of relief." (emphasis added). Plaintiff is "clearly permitted to plead alternative theories of recovery," and it is premature "to dismiss ... unjust enrichment claims [at the motion to dismiss stage] on this basis." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004); *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) ("An unjust enrichment claim may be sustained independently as an alternative theory of recovery."). As Judge McNulty ultimately concluded, "[i]t is only duplicate recovery that is prohibited," not

alternative theories of liability. *U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc.*, 2014 WL 197878, at *3 (D.N.J. Jan. 14, 2014). Other courts in this district have cited Rule 8 when reaching the same result. *See In re Insurance Brokerage Antitrust Litig.*, 2017 WL 3642003, at *14 (D.N.J. Aug. 23, 2017) ("[A] plaintiff may plead a quasi-contract claim even if it is factually inconsistent with other claims or theories premised on the existence of a contract"); *accord CHNJ Investors, LLC v. Koger*, 2013 WL 1192400, at *9-10 (D.N.J. Mar. 21, 2013); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *22 (D.N.J. May 8, 2017). Thus, dismissal of Plaintiff's unjust enrichment claim is premature at this stage of the proceedings.

## VI.   PLAINTIFF STATES CLAIMS UNDER MINNESOTA LAW BECAUSE THERE IS A PUBLIC BENEFIT CONVEYED TO THE CLASS AND A RISK OF FUTURE HARM

Defendant next argues that Plaintiff's Minnesota consumer protection claims, *see* Compl. ¶¶ 96-155, fail because Plaintiff cannot "demonstrate that the cause[s] of action benefit[] the public" and because "Plaintiff has not alleged any risk of future harm[.]" MTD at 19-20.[4] That is meritless. Plaintiff very clearly alleges that the lawsuit against Defendant serves a public benefit, and that, unless that benefit is served, the risk of injury to consumers is both presently ongoing and likely to recur in the future:

> Shop-Vac's conduct complained of herein is unfair and deceptive, and has therefore harmed the Plaintiff and Minnesota Subclass members, as well as the public. This litigation thus serves a public benefit. Additionally, ***there is ongoing harm to the public, the Plaintiff, and Minnesota Subclass members because the***

---

[4] Defendant's arguments here concern Plaintiff's claims under the Minnesota Prevention of Consumer Fraud Act ("MPCFA"); the Minnesota Deceptive Trade Practices Act ("MDTPA"); the Minnesota Unlawful Trade Practices Act ("MUTPA"); and the Minnesota False Statement in Advertising Act ("MFSAA"). Compl. ¶¶ 96-155. Notably, Defendant does not challenge Plaintiff's ability to bring claims under the New Jersey Consumer Fraud Act or Pennsylvania's Unfair Trade Practices and Consumer Protection Law. It may not do so for the first time on reply. *See Cooper v. Medimetriks Pharm., Inc.*, 2019 WL 1370414, at *5 (D.N.J. Mar. 25, 2019) ("However, the Court will not rule upon an argument that has been raised in the first instance in a reply brief.").

> *deceptive and misleading HP Claims are still in use by Shop-Vac today*.
>
> There is a strong public interest in preventing fraud and deceptive practices by manufacturers, sellers, and merchants for truth in the interest of a free and truthful market.
>
> Shop-Vac's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct. ***This action benefits the public by addressing the proper advertising and claims on consumer products in the interest of a free marketplace and truthful advertising***.  Shop-Vac's unlawful conduct has harmed, ***and is harming, the public to this day***.
>
> Plaintiff and Minnesota Subclass have been damaged and injured by, on account of, and as a direct, proximate, and foreseeable result of Shop-Vac's violations of this statute[.]

Compl. ¶¶ 112-114 (emphasis added); *see also id.* at ¶¶ 80, 104, 107 ("Defendant's acts and practices described herein offend established public policy because of the harm they cause to consumers, other sellers and manufacturers of products, and because Defendant fraudulently concealed the defective nature of the Vacuums from consumers.  …  Shop-Vac continues to affirmatively misrepresent and conceal from the consuming public the truth about the Vacuums, namely that the Vacuums do not have '2.5 Peak HP' to '6.5 Peak HP' in the HP Claims.  …  Shop-Vac's unfair or deceptive acts or practices were and are likely to deceive reasonable consumers about the Vacuums' true horsepower output and, by extension, the true value of the Vacuums.").

Defendant nevertheless contends that "[t]here is no 'public benefit' in second guessing the well-reasoned decision of a federal court to resolve disputed claims in this way."  MTD at 19.  That fails on the merits.  As discussed above, no court has blessed the disclaimer as actually used by Defendant here.  In any event, the public benefit inquiry focuses primarily on "the form of the alleged misrepresentation[,]" rather than the type of relief sought:

> Even if Plaintiffs had failed to request injunctive relief, however, that fact would "not preclude" satisfaction of "the public benefit requirement."  …  Plaintiffs alleged [that Defendants] *mass marketed misrepresentations* about LG televisions *to the public*.  Further, Plaintiffs alleged an injunction would be appropriate

15

> because "there is no way for them to know when or if Defendants
> ... ceased misrepresenting the refresh rates of LG televisions." …
> Thus, construing the Complaint in the light most favorable to
> Plaintiffs, Plaintiffs requested injunctive relief and alleged
> that [Defendants] fraudulently market televisions to the public.
> ***The result of this lawsuit may, either directly or indirectly, benefit
> the public by causing [Defendants] to redress the allegedly
> fraudulent marketing***.  And, for these reasons, the Court will deny
> Defendants' motion to dismiss [Plaintiffs' statutory claims under
> Minnesota law].

*Hudock v. LG Elecs. U.S.A., Inc.*, 2017 WL 1157098, at *6 (D. Minn. Mar. 27, 2017) (emphasis

added); *see also Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1328 (D. Minn. 2018).

Since Plaintiff's allegations in this case parallel those in *Hudock*, he has plausibly alleged future

benefit to the public will result from his pursuit of these claims against Defendant.  *See, e.g.*,

Compl. ¶¶ 80, 104, 107, 112-15, 128.

      Defendant also contends that Plaintiff's MDTPA claim fails because "the sole statutory

remedy under the MDTPA is injunctive relief for prospective violations," and Plaintiff "has not

alleged any risk of future harm here."  MTD at 20.  "But on a motion to dismiss a plaintiff must

simply 'allege facts sufficient to support a likelihood of future harm.'"  *Hudock*, 2017 WL

1157098, at *6 (quoting *Deleski Ins. Agency, Inc. v. Allstate Ins. Co.*, 2013 WL 6858573, at *13

(D. Minn. Dec. 30, 2013)).  Plaintiff has done so.  *See, e.g.*, Compl. ¶ 104 ("Shop-Vac continues

to affirmatively misrepresent and conceal from the consuming public the truth about the

Vacuums, namely that the Vacuums do not have '2.5 Peak HP' to '6.5 Peak HP' in the HP

Claims."); *id.* ¶ 112 ("Additionally, there is ongoing harm to the public, the Plaintiff, and

Minnesota Subclass members because the deceptive and misleading HP Claims are still in use by

Shop-Vac today.").

## VII. PLAINTIFF'S TORT-BASED CLAIMS ARE NOT BARRED BY THE ECONOMIC LOSS DOCTRINE

      Defendant argues Plaintiff's tort-based claims are barred by the "economic loss doctrine"

because Plaintiff "does not allege damage to his tangible personal property other than the goods

or the buyer's real property."  MTD at 22-23.  That is meritless.  Defendant's argument fails

because it ignores the "well-settled exception to the economic loss doctrine is fraud in the

inducement of a contract."  *Fischell v. Cordis Corp.*, 2016 WL 5402207, at *8 (D.N.J. Sept. 26,

2016); *see also In re Volkswagen Timing Chain*, 2017 WL 1902160, at *17 ("New Jersey

[courts] do not apply the economic loss doctrine to fraud based claims when a plaintiff alleges

fraudulent inducement[.]"); *Metex Manufacturing Corp. v. Manson*, 2008 WL 877870 at *4

(D.N.J. Mar. 28, 2008) ("New Jersey law permits a tort claim to proceed with a breach of

contract claim when the tort claim involves fraudulent inducement on the theory that such a

claim is extraneous to the performance of the related contract.").

In determining whether the fraudulent inducement exception applies, "the critical issue is

whether the allegedly tortious conduct is extraneous to the contract."  *Emerson Radio Corp. v.

Orion Sales, Inc.*, 2000 WL 49361 at *7 (D.N.J. 2000) (reversed in part on other grounds).

Applying this test, courts in this district hold that the economic loss doctrine does not bar tort

claims predicated on fraudulent misrepresentations that "precede[d] the actual commencement of

the agreement."  *Metex*, 2008 WL 877870 at *4; *see also Grasso Foods, Inc. v. Wynn

Environmental Sales Co.*, 2018 WL 3455479, at *3 (D.N.J. 2018) (same).  Plaintiff alleges

precisely that:

> **Prior to his purchase** of his Shop-Vac vacuum, Plaintiff Johnson
> reviewed the product's labeling and packaging and saw [the HP
> Claims].  Plaintiff Johnson **relied** on that labeling and packaging to
> choose his vacuum over comparable models. ... [Plaintiff Johnson]
> **would not have purchased his Shop-Vac vacuum** on the same
> terms had he known these representations were not true.  In
> making his purchase, Plaintiff Johnson paid a **substantial price
> premium** due to the false and misleading HP Claims.

Compl. ¶ 5 (emphasis added).  Plaintiff further alleges that the "misrepresentations and

omissions made by Defendant, upon which Plaintiff and Class members reasonably and

justifiably relied, were intended to induce and actually induced Plaintiff and Class members to

purchase the Vacuums."  *Id.* ¶¶ 63, 69; *see also id.* ¶ 79 ("Defendant purposefully and knowingly failed to disclose the Vacuums' true horsepower output to consumers … to secure the sale of the Vacuums at a premium price. ... Defendant intended that Plaintiff and the Class members rely on the HP Claims, so that they would purchase the Vacuums.").

Moreover, as recent decisions illustrate, the fraudulent inducement exception is broad enough in scope to encompass each of the tort claims alleged in the Complaint.  Indeed, courts in this District have extended this exception to a variety of actions in tort, including those for common law fraud, negligent misrepresentation, and violations of the consumer protection statutes. *See, e.g.*, *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at *14 (D.N.J. Aug. 29, 2018) ("[I]n New Jersey, the economic-loss rule does not bar tort actions under theories of fraud or negligent misrepresentation."); *In re Volkswagen Timing Chain*, 2017 WL 1902160, at *16; *KBWB Constr. Co., LLC v. Allied Envtl. Servs., Inc.*, 2019 WL 585426, at *3 (D.N.J. Feb. 13, 2019); *First Valley Leasing, Inc. v. Goushy*, 795 F. Supp. 693 (D.N.J. 1992).

## VIII.   DEFENDANT'S STANDING ARGUMENTS DO NOT SUPPORT DISMISSAL

### A.   Plaintiff Has Standing To Assert Claims Related To All Substantially Similar Shop-Vac Vacuums That Feature An HP Claim

Defendant next contends that "Plaintiff lacks standing to pursue claims with respect to products that he did not purchase."  MTD at 21.  Specifically, Defendant contends that "Plaintiff cannot simply throw these distinct wet/dry vacuum products series into his Complaint and purport to assert claims for all of them, because these products are each different from one another."  MTD at 21.  This argument is premature because "[i]n addressing whether a plaintiff may assert claims in a putative class action regarding products the plaintiff did not personally purchase or use, courts in this District generally hold that the standing issue becomes ripe only in the context of a motion for class certification."  *Cannon v. Ashburn Corp.*, 2016 WL 7130913, at

*4 (D.N.J. Dec. 7, 2016) (quotation omitted); *see also Luppino v. Mercedes-Benz USA, LLC*,

2013 WL 6047556, at *5 (D.N.J. Nov. 12, 2013) ("The Court agrees with Plaintiffs that it would

be premature to determine the standing issue at this time as to product combinations Plaintiffs

did not purchase or lease themselves.  As the United States Supreme Court has recognized, there

is clearly an inherent tension between the issues of standing and adequate representation for class

certification.").  Any "differences between claims among separate statewide classes" should not

be "shoehorn[ed] … into an Article III analysis," but instead should be analyzed under Rule 23.

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 368-69 (3d Cir. 2015); *see also id.* at 368

("[T]he question whether [a class representative] may be allowed to present claims on behalf of

others who have similar, but not identical, interests depends not on standing, but on an

assessment of typicality and adequacy of representation.'") (quoting 7AA Charles A. Wright et

al., Fed. Prac. & Proc. Civ. § 1785.1 (3d ed. 2014)).

Even if not premature, under the majority rule, "[a] plaintiff may have standing to assert

claims on behalf of putative class members regarding products they did not personally purchase

where (1) the basis of the claims is the same, (2) the products are closely related, and (3) the

claims are against the same defendants." *Cannon v. Ashburn Corp.*, 2016 WL 7130913, at *4

(D.N.J. Dec. 7, 2016).[5]  As the Third Circuit explained, "[w]here an action challenges a policy or

practice, the named plaintiffs suffering one specific injury from the practice can represent a class

suffering other injuries, so long as all the injuries are shown to result from the practice." *Baby

Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).  That is because where, as here, "a

class includes purchasers of a variety of different products, a named plaintiff that purchases only

---

[5] Defendant fails to disclose a split of authority in this District on the issue of whether a named plaintiff in a class action has standing to bring claims based on similar products he or she did not purchase.  *See Neuss v. Rubi Rose, LLC*, 2017 WL 2367056, at *5 (D.N.J. May 31, 2017) (explaining split and surveying authorities); *Luppino v. Mercedes-Benz USA, LLC*, 2013 WL 6047556, at *5-6 (D.N.J. Nov. 12, 2013) (same).

one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012).

Nonetheless, Defendant complains that Plaintiff "[d]oes not allege that he saw any advertisements, representations, or marketing relating to any other products besides the specific model that he allegedly purchased." MTD at 20. That is irrelevant given that the Vacuums are "commonly and uniformly labeled, packaged, marketed, and advertised with representations of horsepower ratings[,]" and that all such representations "are untrue and misleading, as the actual operating power and functionality of the Vacuums, under any condition, is only a small fraction of these representations[.]" Compl. ¶¶ 11-12; *see also id.* ¶¶ 1-3, 5, 7. Moreover, as the Complaint details, the veracity of Defendant's particular HP Claim can be assessed for each Vacuum using the ***same formula*** – a highly conservative "calculation[ that] can be easily calculated for every model Vacuum, with one, uniform answer: the Vacuums do not, and cannot produce the claimed horsepower." *Id.* ¶ 22 (emphasis in original).

Defendant next argues that "each of these wet/dry vacuums are different, with different performance specifications and operations." MTD at 20. That also is a non-starter because, in the class context, products need not be identical:

> In addition, … because Plaintiffs allege that the ***defect is present in Chrysler's factory-installed sunroofs***, Plaintiffs sufficiently allege that the basis for each consumer fraud claim is the same across all vehicles. Accordingly, because the ***factory-installed sunroof is the common denominator*** between all vehicles manufactured by Chrysler, the products are closely related. ***Though [there is no allegation that] the vehicles sunroofs are all of identical design, the Court does not find this fatal to Plaintiffs' standing***. … Under these circumstances, the Court refuses to dismiss Plaintiffs' claims as they relate to vehicles that named Plaintiffs have not purchased.

*Cox v. Chrysler Grp.*, 2015 WL 5771400, at *14-15 (D.N.J. Sept. 30, 2015) (emphasis added).

The cases cited by Defendant do not compel the opposite conclusion in light of more

recent decisions applying the majority rule and refusing to dismiss claims for products that the named plaintiffs did not personally purchase. *See*, *e.g.*, *Burke v. Weight Watchers Int'l, Inc.,* 983 F. Supp. 2d 478, 482 (D.N.J. 2013) ("Here, though Burke purchased only two kinds of Weight Watchers Diet Bars, she seeks to bring class action claims that cover the entire line of Diet Bars. The basis for Burke's claims is the same with respect to all of the Diet Bars, the Diet Bars are closely related because they belong to the same product line, and the Defendants are the same. [T]he Court will DENY Burke's motion to dismiss for lack of standing."); *Neuss*, 2017 WL 2367056, at *5; *Cannon*, 2016 WL 7130913, at *4; *Bedi v. BMW of N. Am., LLC*, 2016 WL 324950, *7 (D.N.J. Jan. 27, 2016); *cf. In re Insulin Pricing Litig.*, 2019 WL 643709, at *18 n.14 (D.N.J. Feb. 15, 2019) (acknowledging majority rule "deals with 'absent [class] members [who] were allegedly injured by the same non-conforming feature of different models of the same product, manufactured or distributed by the same defendants based on uniform representations.'").[6]

### B.   Plaintiff Has Article III Standing To Pursue Injunctive Or Declaratory Relief

Defendant's final argument is that Plaintiff lacks Article III standing to "seek injunctive and declaratory remedies" because Plaintiff alleges "literally zero risk of future harm[.]"  MTD at 23-24 (emphasis omitted).  Not so.  As the Ninth Circuit has explained:

> [A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of

---

[6] *See also Eberhart v. LG Elecs. USA, Inc.*, 2015 WL 9581752, at *3 (D.N.J. Dec. 30, 2015); *Cox v. Chrysler Grp.*, 2015 WL 5771400, at *14–15 (D.N.J. Sept. 30, 2015); *In re Gerber Probiotic Sales Practices Litig.*, 2014 WL 5092920, at *4–6 (D.N.J. Oct. 10, 2014); *In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*, 2013 WL 6450701, at *4 (D.N.J. Dec. 9, 2013); *Durso v. Samsung Elecs. Am., Inc.*, 2013 WL 5947005, at *4–6 (D.N.J. Nov. 6, 2013); *Luppino v. Mercedes-Benz USA, LLC*, 2013 WL 6047556, at *5–6 (D.N.J. Nov. 12, 2013); *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *14–16 (D.N.J. June 26, 2012).

> future harm. … Knowledge that the advertisement or label was
> false in the past does not equate to knowledge that it will remain
> false in the future. In some cases, the threat of future harm may be
> the consumer's plausible allegations that she will be unable to rely
> on the product's advertising or labeling in the future, and so will
> not purchase the product although she would like to. *See, e.g., …*
> *Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *4 (N.D. Cal. Mar.
> 18, 2015) ("[U]nless the manufacturer or seller has been enjoined
> from making the same representation, [the] consumer … won't
> know whether it makes sense to spend her money on the
> product."). In other cases, the threat of future harm may be the
> consumer's plausible allegations that she might purchase the
> product in the future, despite the fact it was once marred by false
> advertising or labeling, as she may reasonably, but incorrectly,
> assume the product was improved. … Either way, we share one
> district court's sentiment that we are "not persuaded that injunctive
> relief is never available for a consumer who learns after purchasing
> a product that the label is false." *Duran v. Creek*, 2016 WL
> 1191685, at *7 (N.D. Cal. Mar. 28, 2016) (emphasis added).

*Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017) (some citations

omitted).

Here, Plaintiff adequately pleads both "continuing, present adverse effects" *and* a

likelihood of future harm because "there is ongoing harm to the public [and class members since]

the deceptive and misleading HP Claims are still in use by Shop-Vac today." Compl. ¶ 112.

Since "Shop-Vac's unlawful conduct is continuing, with no indication that Defendant intends to

cease this fraudulent course of conduct[,] [t]his action benefits the public by addressing the

proper advertising and claims on consumer products in the interest of a free marketplace and

truthful advertising." *Id.* ¶ 113. As the Third Circuit recognized, claims for injunctive relief are

particularly suitable for class certification. *See Baby Neal*, 43 F.3d at 57-58 ("[C]ases

challenging the same unlawful conduct which affects both the named plaintiffs and the putative

class usually satisfy the typicality requirement irrespective of the varying fact patterns

underlying the individual claims. Actions requesting declaratory and injunctive relief to remedy

conduct directed at the class clearly fit this mold.").[7]

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss should be denied in full. Alternatively, if the motion to dismiss is granted in any respect, Plaintiff should be given leave to amend. *See Feuerstein v. Simpson*, 582 Fed. App'x. 93, 98 (3rd Cir. 2014) ("In general, Rule 15 should be interpreted liberally, in favor of permitting amendment whenever doing so will serve the underlying purposes of the Rule.").


Dated:  October 4, 2019                               Respectfully submitted,

                                                      **BURSOR & FISHER, P.A.**

                                                      By:____ */s/ Frederick J. Klorczyk III*_____
                                                              Frederick J. Klorczyk III

                                                      Frederick J. Klorczyk III
                                                      1990 North California Blvd., Suite 940
                                                      Walnut Creek, CA 94596
                                                      Telephone: (925) 300-4455
                                                      Facsimile:  (925) 407-2700
                                                      E-Mail:  fklorczyk@bursor.com

                                                      *Attorneys for Plaintiff*

---

[7] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Past exposure to illegal conduct does not now in itself show a present case or controversy … if unaccompanied by any continuing, present adverse effects.")