NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

:
KEVIN JOHNSON, individually and on :
Behalf of all others similarly situated, :
:
                  Plaintiff, :
:
            v. :    Case No. 3:19-cv-14834-BRM-DEA
:
SHOP-VAC CORPORATION, :
:
                  Defendant. :    **OPINION**
:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Shop-Vac Corporation's[1] ("Shop-Vac") Motion to Dismiss Plaintiff Kevin Johnson's[2] ("Johnson") claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and an accompanying Request for Judicial Notice. (ECF No. 12.) Johnson opposes the motion. (ECF No. 14.) Having reviewed the parties' submissions and having heard oral argument on June 2, 2020, pursuant to Federal Rule of Civil Procedural 78(a), for the reasons set forth below, and for good cause shown, Shop-Vac's Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

    **I.**    **BACKGROUND**

        **A. Factual Background**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in Johnson's Complaint (the "Complaint") as true, considers any document "*integral to or explicitly*

---

[1] Shop-Vac is "a New Jersey corporation, with its headquarters in Williamsport, Pennsylvania." (Compl. (ECF No. 1 ¶ 6.)

[2] Johnson is "a citizen of Wisconsin, residing in Hudson, Wisconsin." (*Id.* ¶ 5.)

*relied upon in the complaint*," and draws all inferences in the light most favorable to Plaintiff. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Johnson brings this nationwide putative class action "regarding [Shop-Vac's] false and misleading labeling and packaging of Shop-Vac brand vacuums." (ECF No. 1 ¶ 1.) Specifically, in or about June 2018, Johnson purchased a "Shop-Vac 16 Gallon 6.5 Peak HP Stainless Steel Contractor Wet Dry Vac . . . from a retail store."[3] (*Id.* ¶ 5.) Johnson alleges he relied on the "labeling and packaging to choose his vacuum over comparable models," and "saw these representations prior to, and at the time of purchase . . . under[standing] them as representations and warranties." (*Id.*) Further, Johnson believed these warranties could be reasonably understood to represent that the "vacuum was capable of producing the claimed '6.5 Peak [horsepower][4]' during normal use and operation." (*Id.*)

Johnson claims he relied on the Peak Horsepower claims when purchasing the vacuum, and "would not have purchased his Shop-Vac Vacuum on the same terms had he known these representations were not true." (*Id.* ¶ 5.) As such, Johnson alleges he "paid a substantial price premium due to the false and misleading [Peak Horsepower claims]." (*Id.*) Additionally, "Johnson . . . understood that in making the sale, his retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant." (*Id.*)

---

[3] Plaintiff purchased the vacuum from "Menards at 5800 Kreuger Lane, Oak Park Heights, MN 55082." (ECF No. 1 ¶ 5.)

[4] For purposes of this opinion, the Court will refer to this representation as the "Peak Horsepower claims."

2

### B. Procedural History

On July 7, 2019, Johnson filed the Complaint against Shop-Vac, asserting eleven claims: (1) Breach of Express Warranty; (2) Breach of Implied Warranty of Merchantability; (3) Unjust Enrichment; (4) Negligent Misrepresentation; (5) Fraud; (6) Violation of the New Jersey Consumer Fraud Act; (7) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; (8) Violation of the Minnesota Prevention of Consumer Fraud Act; (9) Violation of the Minnesota Uniform Deceptive Trade Practices Act; (10) Violation of the Minnesota Unlawful Trade Practices Act; and (11) Violation of the Minnesota False Statement in Advertising Act. (ECF No. 1.)

On September 6, 2019, Shop-Vac filed a Motion to Dismiss (ECF No. 12), accompanied by a Request for Judicial Notice (ECF No. 13). On October 4, 2019, Johnson filed an Opposition to Shop-Vac's Motion to Dismiss. (ECF No. 14.) On October 21, 2019, Shop-Vac filed its Reply. (ECF No. 15.) The Court heard oral argument on June 2, 2020. (ECF No. 16.)

### II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the

complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' —'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevy*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a

4

court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III.   DECISION

Shop-Vac raises several preliminary issues for the Court's consideration.[5] As a threshold matter, Shop-Vac argues Johnson lacks standing to: (1) assert claims related to products besides the specific vacuum he purchased; and (2) pursue injunctive or declaratory relief. Because standing is a matter of jurisdiction, the Court will address this issue first. *See Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional.")).

Shop-Vac also contends the Complaint should be dismissed because (1) the explanatory language in the disclaimer at issue in this case was approved by a neutral third-party in litigation affecting Shop-Vac's products, and (2) in consequence, the language, as approved by the third-party, lacks any potential for misrepresentation. (ECF No. 12-1 at 8-9.) To reach this issue at this phase of litigation, Shop-Vac requests the Court take judicial notice of both the product's box and the publicly availably court records filed in a previous federal court action.[6] Because the disclaimer

---

[5] Among the preliminary issues in the Motion to Dismiss is a choice-of-law determination. In its briefing, Shop-Vac effectively concedes there is no conflict between the laws of each potentially relevant state. (ECF No. 12-1 at 14-15 n.4-8.) During oral argument on June 2, 2020, both parties agreed there is no true conflict between the potentially applicable state laws, so the Court applies New Jersey law where relevant. *P.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008).

[6] Shop-Vac was party to multidistrict litigation ("MDL") captioned, *In re Shop-Vac Marketing and Sales Practices Litig.*, MDL No. 2380, Case No. 4:12-md-02380-TK (M.D. Pa.). The MDL resulted in settlement presided over by the Honorable Edward A. Infante, retired Chief Magistrate Judge of the United States District Court for the Northern District of California. (ECF No. 12-8 at

5

is central to Johnson's claims, the Court will address Shop-Vac's Request for Judicial Notice before examining the eleven counts contained in the Complaint. Those counts will be discussed to the extent they are not mooted by the notice the Court takes with respect to the disclaimer language.

### A. Standing

#### 1. Claims on Behalf of Similarly Situated Purchasers

Shop-Vac argues Johnson lacks standing to assert claims against all products in the Complaint because he "sought to plead claims on behalf of purchasers of Shop-Vac vacuums with Peak Horsepower ratings . . . across a range of different (and unrelated) series of products" despite only alleging to purchase one type of vacuum. (ECF No. 12-1 at 27.) In other words, Shop-Vac alleges "Plaintiff lacks standing to pursue claims with respect to products that he did not purchase." (*Id.* at 28.) Johnson contends such an argument is premature because "courts in this District generally hold that the standing issue becomes ripe only in the context of a motion for class certification." (ECF No. 14 at 24.)

Under Article III of the United States Constitution, a plaintiff may only bring claims in federal court if the plaintiff asserts: (1) an injury that is (a) concrete and particularized and (b) actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and, (3) a likelihood that a judicial decision favorable to the plaintiff will redress the injury. *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In the context of a class action, the named plaintiff purporting to represent a class of similarly situated individuals must establish the requisite case or controversy in order to seek relief. *See Mayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 361 (3d Cir. 2013). The issue here is whether

---

33.) During the negotiations, the MDL parties agreed to settle the claims on a class-wide basis. (ECF No. 12-1 at 8.) The Honorable Yvette Kane, United States District Judge for the Middle District of Pennsylvania, approved the settlement's terms. (ECF No. 12-8 at 2.)

the case or controversy requirement is met where a class plaintiff only purchased one product in the line of similar products at issue in the litigation. The Court finds it is.

Precedent dictates "[a] plaintiff may have standing to assert claims on behalf of putative class members regarding products [the plaintiff] did not personally purchase where (1) the basis of the claims is the same, (2) the products are closely related, and (3) the claims are against the same defendants." *Schechter v. Hyundai Motor Am.*, Case No. 18-13634, 2019 WL 3416902, at *5 (D.N.J. July 29, 2019) (citing *Hass v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1088-89 (3d Cir. 1975); *see also Stewart v. Smart Balance, Inc.*, Case No. 11-6174, 2012 WL 4168584, at *14-16 (D.N.J. June 26, 2012); *In re Gerber Probiotic Sales Practices Litig.*, Case No. 12-835, 2014 WL 5092920, at *6-8 (D.N.J. Oct. 10, 2014); *In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*, Case No. 12-3571, 2013 WL 6450701, at *4-6 (D.N.J. Dec. 9, 2013); *Neuss v. Rubi Rose, LLC*, Case No. 16-2339, 2017 WL 2367056, at *5-6 (D.N.J. May 31, 2017) (finding dismissal on standing grounds premature where these three factors were present). Here, the Court finds all three factors are present. The claims in the case are all related to the Peak Horsepower claims. (ECF No. 1 ¶¶ 1-3**.**) Additionally, while the performance specifications and operation of the vacuums in question may be different, each of the products contains the explanatory language at issue in the MDL, thereby satisfying the closely related requirement. (ECF No. 12-1 at 28.) Finally, Johnson's claims all involve the same defendant, Shop-Vac. (ECF No. 1 ¶ 6.)  Therefore, the Court finds Johnson has standing to assert claims on behalf of the class members with respect to Shop-Vac vacuums with Peak-Horsepower ratings.

### 2. Claims for Injunctive Relief

Shop-Vac also contends Johnson lacks standing to assert claims for injunctive and declaratory relief. (ECF No. 12-1 at 33.) It states such relief is unavailable because "there is

literally *zero* risk to future harm to the Plaintiff because he (1) already purchased his Shop-Vac vacuum and (2) does not (and could not plausibly) allege that he wants to purchase a Shop-Vac vacuum in the future." (*Id.*) Johnson disputes this, arguing such relief is warranted because "the deceptive and misleading [Peak Horsepower claims] are still in use by Shop-Vac today," harming present and future consumers. (ECF No. 14 at 20-21.)

A plaintiff seeking prospective relief such as an injunction must be able to demonstrate a likelihood of future injury resulting from the defendant's conduct. *City of L.A. v. Lyons*, 461 U.S. 95 (1983). This requirement must also be satisfied in the class action context by at least one plaintiff. *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (citations omitted). Here, Johnson fails to allege in his Complaint that he is likely to purchase a Shop-Vac vacuum in the future. The Complaint further fails to allege any of the class members will suffer future harm because they would wish to purchase Shop-Vac vacuums if not mislabeled. Therefore, Johnson lacks the requisite standing to assert the requested prospective relief.

### B.  Judicial Notice

Shop-Vac requests the Court take judicial notice of "(1) images of the actual box carton packaging of the product allegedly purchased by [Johnson] forming the basis of this lawsuit; and (2) court records publicly filed in a previous federal court action." (ECF No. 13 at 1.)

Pursuant to the Federal Rules of Evidence, a Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed R. Evid. 201(b); *see also U.S. v. Carr*, 25 F.3d 1194, 1203 (3d Cir. 1994). Taking notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment so long as the facts are noticed in accordance with the Federal Rules of

Evidence. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). However, it "is improper for a court to take judicial notice of the veracity and validity of a public document's contents when the parties dispute the meaning and truth of the contents." *See, e.g., Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) (reversing a district court's grant of a motion to dismiss where the court not only took judicial notice of undisputed matters of public record but also took judicial notice of "disputed facts stated in public records" and relied on the validity of those facts in deciding the motion to dismiss).

During oral argument, both parties consented to the Court judicially noticing the product's packaging. Despite contest from Johnson, the Court also takes judicial notice of the settlement reached in the prior MDL.[7] Because the language of the disclaimer is no longer at issue, the Court now focuses on the parties' disagreement pertaining to the placement of the explanatory language on the product packaging.

### C. Placement of the Disclaimer

The crux of the parties' disagreement pertains to the sufficiency of the disclaimer's placement on the product's packaging. (ECF No. 12-1 at 8-9.) Shop-Vac states it included a "dagger" symbol on the packaging next to the Peak Horsepower measurement, intended to direct prospective consumers to the following statement on the packaging:

---

[7] During the June 2, 2020, hearing, Johnson argued there are no true adversaries when a settlement is being finalized, particularly when the settlement follows years of contested litigation. In other words, Johnson claimed it is not necessarily proper for the Court to judicially notice the fact that the agreed-upon language is "cured [of] any 'potential for misrepresentation'" because the parties are more heavily incentivized to compromise for the sake of settlement. (ECF No. 12-1 at 9.) While Johnson's point is well-taken by the Court, the MDL plaintiffs agreed to settle their claims on a class-wide basis. (*Id.* at 8.) The Federal Rules of Civil Procedure dictate a proposed settlement in a class action suit must be "negotiated at arm's length" and is subject to the court's approval. Fed. R. Civ. P. 23(e). Judge Kane approved the settlement and with it, the agreed-upon language, after engaging in a nine-factor fairness analysis. (ECF No. 12-8 at 16-22.) Therefore, the veracity and validity of the agreed-upon language resulting from the settlement cannot be disputed in this case.

> †"Peak Horsepower" (PHP) is a term used by the wet-dry vacuum industry for consumer comparison purposes. It does not define the operational horsepower of a wet-dry vacuum but rather the horsepower output of a motor, including the motor's inertial contribution, achieved in laboratory setting. In actual use, ShopVac motors do not operate at the peak horsepower shown.

(ECF No. 12-1 at 12) (citing ECF No. 12-2 ¶ 8.) With respect to the packaging itself, the artwork printed on the box measures 18.3125 inches wide and 31.0625 inches high. (ECF No. 12-2 ¶ 8.) The explanatory statement that corresponds to the dagger symbol is found in the bottom-left corner of the back panel of the box and is placed between trademark information and a second disclaimer related to tank capacity. (*Id.*) In total, the three statements measure 3.6 inches wide and 2.73 inches high. (*Id.*)

While this district has not extensively addressed the issue of footnotes or disclaimers on packaging, case law teaches the inquiry should focus on whether a consumer would tend to overlook the footnote or disclaimer. *See Lieberson v. Johnson & Johnson Consumer Co., Inc.*, 865 F. Supp.2d 529, 541 (D.N.J. 2011). A footnote or disclaimer will not salvage an otherwise misleading representation if the footnote or disclaimer "is so inconspicuously located or in such fine print that readers tend to overlook it." *Id.* at 541 n.3 (citing *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 906 F. Supp. 178, 182 (S.D.N.Y. 1995).

At issue in *Lieberson* was a product label that included a claim the product was "clinically proven" to help babies sleep better. *Id.* While the phrase "clinically proven" was contained between asterisks, the label lacked reference to an explanation either on the label or elsewhere. *Id.* at 541 n.3. Consequently, the court found the label actionable under the New Jersey Consumer Fraud Act. *Id.* at 541.

Here, unlike the label at issue in *Lieberson*, the product's package does contain explanatory

10

language clarifying the Peak Horsepower claim. The front panel of the box most notably contains a picture of the vacuum and three circles containing claims with respect to tank capacity, volume, and Peak Horsepower. (ECF No. 12-2 at 6.) The back panel of the box, on the other hand, includes more detailed information regarding features of the vacuum and the accessories that are included in the packaging. While the disclaimer is placed in the bottom corner on the back side of the packaging, it is located directly below information that most consumers would review when deciding whether to purchase an item such as a vacuum. Additionally, the font is not so small as to render it inconspicuous to a reasonable consumer reviewing the product packaging. Therefore, the Court does not find the placement of the explanatory language misleading to the reasonable consumer.

In sum, nine of the eleven causes of action alleged in the Complaint require a plausible allegation of either a false statement or misrepresentation of material fact.[8] Because the Court finds neither the language contained in the disclaimer nor the disclaimer's placement misleading, Shop-Vac's Motion to Dismiss Counts Three through Eleven of the Complaint is **GRANTED**.

### D. Warranty Claims

#### 1. Breach of Express Warranty

Count One of the Complaint alleges Shop-Vac "expressly warranted that the Vacuums

---

[8] *See Iladis v. Wal-Mart Store, Inc.*, 922 A.2d 710, 723 (N.J. 2007) (stating unjust enrichment seeks to disgorge the defendant of any benefits unjustly obtained); *National Sec. Sys. Inc. v. Iola*, 700 F.3d 65, 108 (3d Cir. 2012) (finding that, to prove negligent misrepresentation, a party must establish "[a]n incorrect statement, negligently made and justifiably relied on, [that] may be the basis for recovery of damages for economic loss . . .sustained as a consequence of that reliance") (citation and internal quotation marks omitted); *Triffin v. Automatic Data Processing, Inc.*, 926 A.2d 362, 368 (N.J. Super. Ct. App. Div. 2007) (finding common law fraud under New Jersey law requires a material misrepresentation); New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 (requiring an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission").

outputted a claimed '2.5 Peak HP' to '6.5 Peak HP' . . . [and] the [v]acuums do not, and cannot[] output the horsepower in the [horsepower claims]." (ECF No. 1 ¶¶ 40, 41.) Johnson further alleges this description is not mere puffery because it is a specific description explicitly located on the package. (ECF No. 1 ¶ 5.)

Shop-Vac counters by stating Johnson has "unsuccessfully tried to plead a consumer-fraud claim by ignoring the plain language of the packaging." (ECF No. 12 at 11.) Shop-Vac contends when the packaging is viewed as a whole it leads to a "clear and understandable explanation ensur[ing] that any reasonable consumer would understand that 'Peak Horsepower' is a term of art that does not mean operating horsepower." (*Id.* at 12.) Shop-Vac relies on numerous cases in support of its argument. *See Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282 (D.N.J 2009); *100% Grated Parmesan Cheese Marketing and Sales Practices Litig.*, 275 F. Supp. 3d 910, 913 (N.D. Ill. 2017).

Pursuant to New Jersey law, a plaintiff must allege the following to state a claim for breach of express warranty: "(1) that Defendant made an affirmation, promise or description [of] the product; (2) that this affirmation, promise or description became part of the bass of the bargain for the product and (3) that the product ultimately did not conform to the affirmation, promise, or description." *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (internal citations omitted). "A statement can amount to a warranty, even if unintended to be such by the seller, if it could be fairly understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance." *Avram v. Samsung Elecs. Am., Inc.*, Case No. 11-6973, 2013 WL 3654090, at *8 (D.N.J. July 11, 2013) (citations omitted). However, affirmations "merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Snyder*, 792

12

F.Supp. 2d at 721 (quoting N.J. Stat. Ann. § 12A:2-313(2)). Moreover, mere puffery is "not considered specific enough to create an express warranty." *Id.* "While the alleged warranties may later be found to be no more than mere 'puffery,' except in clear cases, this is normally a question of fact for the jury." *Id.* at 723; *see In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, Case No. 08-939, 2009 WL 2940081, at *16 (D.N.J. Sept. 10, 2009) (dismissing a breach of warranty claim based on Defendant's statement that HD DVD Players were for "Today, Tomorrow, and Beyond," since the statement is just "puffery"). Typically, "courts have noted that 'whether a given statement constitutes an express warranty is normally a question of fact for the jury.'" *Id.* (quoting *In re Ford Motor Co. E–350 Van Prods. Liab. Litig.*, Case No. 03-4558, 2008 WL 4126264, at *4 (D.N.J. Sept. 3, 2008)).

At this stage of the proceedings, Shop-Vac's argument is unavailing. "At the motion to dismiss stage, it is enough that Plaintiffs provide more than 'bald assertion,' and identify specific assertations by Defendant that could be found to constitute an express warranty." *Snyder*, 792 F. Supp. 2d at 722. Johnson sufficiently alleged a claim of breach of express warranty because: (1) Johnson alleged Shop-Vac made a specific description that the vacuum had a peak horse power of 6.5; (2) the description was the basis for Johnson's purchase; and, (3) the product did not conform to the description.  (ECF No. 1 ¶¶ 39, 40, 41, 42); *see also Stewart*, Case No. 11-6174, 2012 WL 4168584, at *16 ("Therefore, the Court concludes Plaintiffs state a claim for breach of express warranty because they sufficiently allege: (1) the Defendant makes a specific description . . . (2) the description was the basis of the bargain for the product; and (3) the product ultimately did not conform to the description."). Accordingly, Shop-Vac's motion to dismiss Count One is **DENIED**.

### 2. Breach of Implied Warranty

Count Two of the Complaint alleges Shop-Vac "breached the warranty implied in the contract for the sale of the [v]acuums." (ECF No. 1 ¶ 46.) Shop-Vac contends "Plaintiff does not state a claim against Shop-Vac based on a breach of an implied warranty of merchantability." (ECF No. 12 at 15.) Further, Shop-Vac argues: (1) Johnson failed to "plausibly allege that his vacuum 'could not pass without objection in the trade under the contract description' or that his vacuum was not of fair average quality within the description"; and (2) "Plaintiff does not plausibly allege that his vacuum was unfit for the ordinary purpose." (*Id.* at 15-16.)

To properly plead a breach of implied warranty claim, a plaintiff must allege "the product at issue [was] defective or not fit for the ordinary purpose for which it was intended." *In re Gerber*, Case No. 12-835, 2014 WL 5092920, at *13 (quoting *In re Toshiba*, Case No. 08-939, 2009 WL 2940081, at *5). To be fit for its ordinary purpose, a product need not meet all buyer expectations or be entirely free of defects; rather, it must merely function for "the general purpose for which it is manufactured and sold." *Lieberson*, 865 F. Supp. 2d at 542.

Shop-Vac argues the ordinary purpose of the product was to "clean debris and liquids." (ECF No. 12 at 16.) Johnson, however, alleges "the goods were unfit for their intended and ordinary purpose because the [v]acuums do not, and in fact, could never output the horsepower claimed during use by Class members as advertised." (ECF No. 1 ¶ 46.) He continues, "the [v]acuums are commonly and uniformly labeled, packaged, marketed and advertised with representations of horsepower ratings between 2.5 Peak HP to 6.5 Peak HP." (*Id.* ¶ 11) (citations omitted). Johnson supports these allegations with images of the product which clearly displays the terms "6.5 Peak HP." (*Id.*) By alleging the products do not function in accordance with their packaging, Johnson properly alleged the vacuums in question were not fit for their ordinary

14

purpose. *See Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2010 U.S. Dist. LEXIS 47128, at *22-23 (D.N.J. May 12, 2010). Accordingly, Shop-Vac's Motion to Dismiss Count Two of the Complaint is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Shop-Vac's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Shop-Vac's Motion to Dismiss the breach of warranty (Count I) claim and breach of implied warranty (Count II) claim is **DENIED**. Shop-Vac's Motion to Dismiss Johnson's unjust enrichment (Count III), negligent misrepresentation (Count IV) claim, fraud (Count V) claim, and state consumer protection (Counts VI-XI) claims is **GRANTED**. An appropriate order will follow.

**Date: June 29, 2020**                                         */s/ Brian R. Martinotti*  
                                                                **HON. BRIAN R. MARTINOTTI**  
                                                                **UNITED STATES DISTRICT JUDGE**